SCHOTT, Chief Judge.
The City of New Orleans has appealed from a judgment in favor of plaintiffs for damages for the City’s wrongful conversion of personal property owned by them. The City contends that its exception of prescription was erroneously overruled and that the award of $36,882.43 was excessive.
On March 18, 1982 City police executed a search warrant at plaintiffs’ home and seized hundreds of items of personal property. Photographs show a vast array of weapons, appliances, jewelry, and even credit cards throughout the house. Included among these were many items belonging to plaintiffs. They arrested plaintiffs and their two sons who lived with them. The district attorney refused charges against the plaintiffs but accepted charges *1374 against the sons for possession of stolen property. According to police witnesses who had custody of the property they notified plaintiffs on March 29, 1982 to reclaim their property and they disposed of it after ninety days without hearing from plaintiffs. They based this procedure on a municipal ordinance which provides for the disposition of property not needed in evidence and remaining unclaimed for a period of ninety days in the possession of the police department; and another similar ordinance concerning firearms.
The trial court found that the ordinance itself is unreasonable in that it fails to provide for notice to the owners and has no procedures for owners to claim their property or even determine what property the police are holding. The court further found that the police gave no notice to plaintiffs of their intention to dispose of plaintiffs’ property.
The first question on appeal is whether the trial court correctly overruled the City’s exception of prescription. The police seized plaintiffs’ property on March 18, 1982. The city offered evidence to prove that on March 29, 1982 the police notified plaintiffs to reclaim their property. Thus, the City argues that plaintiff’s suit filed on February 28, 1984 was prescribed.
An action for wrongful conversion of property is prescribed by one year. LSA-C.C. art. 3492 (formerly C.C. art. 3536). Thus, under the above factual scenario the City’s position might be meritorious, but the trial court found the facts to be otherwise. The trial court found that the police failed to notify plaintiffs in March 1982 to reclaim their property. This finding is not clearly wrong. The police evidence of notification is based on a stamped entry on the evidence card which indicates that the usual form notice to the property owners was mailed at that time. Plaintiffs denied receiving the notice. They testified that they employed an attorney when the seizure took place and authorized him to reclaim the property. The attorney testified that he could not get the district attorney to release the property. In February, 1983 the police sent notices to plaintiffs’ sons that they had thirty days in which to claim firearms which had been seized. This prompted plaintiffs to go to the police department to claim their property and to discover that their property was gone. It appears that the police had disposed of the property in the summer of 1982.
Prescription could not begin to run when the property was initially seized because the City’s possession of the property was not adverse to plaintiffs as long as it was being held as evidence. Plaintiffs could not gain possession of their property at that time even with the assistance of their attorney. Under these circumstances plaintiffs were entitled to a notice that the city would release their property to them before disposing of it. Prescription would not begin to run until plaintiffs had knowledge of the loss of their property. Blunt v. City of New Orleans, 505 So.2d 94 (La.App. 4th Cir.1987).
The City contends that plaintiffs visited the evidence room and learned of the loss of their property in February, 1983, over a year before the filing of the suit on February 28, 1984. In support of this argument the City points to some vague, inconclusive entries on evidence cards, but evidence that the cards had been altered seriously weakened their probative value. On the other hand Mrs. Dillon testified flatly that her visit to the evidence room was in March, 1983. The burden of proving prescription is on the one claiming its benefits. Taken as a whole the evidence is not sufficient to support the City’s exception of prescription.
The other contention of the City concerns the amount of damages awarded by the trial court. In making the award of $36,-882.43 the trial judge assigned the following reasons:
Plaintiffs generally have the burden of proving all elements of their case by a preponderance of evidence. In this case the seizure of plaintiffs’ property, the *1375 items seized and the failure to return the seized items are all well documented by the New Orleans Police Department. The value of the items taken from plaintiffs must be proved. Some of the items had been appraised by Arnoult’s Jewelers. Other items are the unusual items of personal property which an average couple might possess and also some firearms, both handguns and long guns. Few, if any of the citizens of this are keep detailed records of the date of purchase, cost and current value of items of personal property in the family home. To hold plaintiffs to a strict burden of proof as to the replacement value of those common items of personal property by an expert witness is an unreasonable requirement. Those items which were appraised by Raymond Arnoult are valued by the Court at the appraiser’s figures. The other items were valued by the plaintiffs and the Court accepts their calculation as accurate and as sufficient to carry the burden of proof in that regard.
At the outset of this discussion we note an obvious error in the court’s award because for those items which were appraised by Arnoult the judgment exceeds the appraiser’s figures. The total award is taken from an itemized list of the lost items included in plaintiffs’ post trial memorandum. This list contains four columns of figures, one for value, the second for replacement value, the third for Arnoult’s appraised value, and the fourth for the original invoice price. There are eighty items on the list each of which has an assigned replacement value. The total of these replacement values is the amount of the judgment, $36,882.43. Only sixteen items were appraised by Arnoult. The total of these appraised values is $6,720,000. The total of the replacement values assigned to these items is $8,922.00. Thus, the judgment includes an excess of $2,202.00 for the appraised items. Another obvious error is the award of $500 as the replacement value of a typewriter purchased on August 17, 1977 for $200.
In a suit for wrongful conversion where the property cannot be returned the plaintiffs are entitled to recover the value of the property at the time of conversion. Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756 (La.1985). Understandably the trial court was sympathetic with the plaintiffs who were hard pressed to carry this burden of proof, but we are unable to affirm the judgment on the basis of the evidence presented.
The value of the sixteen items apraised by Arnoult as already discussed must be reduced by at least $2,202. Ar-noult made these appraisals for plaintiffs between September, 1979 and April 1980 for insurance purposes. He testified that the value of most of these items had declined some as much as fifty percent since that time. Some further reduction is warranted in view of this testimony. Seven firearms are said to have a value of $2110 but a replacement value (awarded by the trial court) of $2918. Nowhere in her testimony does Mrs. Dillon profess to have any knowledge about the value of firearms. Yet she assigned these values and replacement values, and Mr. Dillon specifically deferred to her judgment. Á number of knives and swords are said to have a replacement value of $4,775. Mr. Dillon could say only that they were given to him by his uncle but neither of the plaintiffs professed to have any knowledge of the value of such items. Mrs. Dillon assigned replacement values of $2,500 for an antique coffee urn which formerly belonged to her grandmother and $5,000 for a box of china, 45 years old, some broken. We have concluded that these replacement values are not supported by competent evidence. Mrs. Dillon’s unsupported opinions as to the values of items about which even she did not even profess to be knowledgeable was insufficient to show the value of the items at the time of the conversion. The plaintiffs did not establish that an expert on firearms, other weapons, antiques, and china could not be found to place some range of value on each item.
*1376 Next, while we find the award $5,000 for twelve tapes of home movies to be high we are not persuaded that this constitutes an abuse of the trial court’s discretion.
Finally, the values assigned to the remaining items taken individually are for the most part not significant and are not worthy of specific analysis at the appellate level. However, no proof of their value was offered by plaintiffs and their replacement values like the others seem to have been assigned by Mrs. Dillon off the top of her head.
We have considered three alternatives. The first is to deny recovery for any item for which plaintiff offered no proof of value whatsoever. While a strict application of the law might warrant this result, principles of equity and fairness militate against it. Another alternative is to remand the case for a new trial on value, but plaintiffs already had an opportunity to prove their case and it would be unfair to the defendant to give them a second chance. C.C.P. art. 2164 authorizes the appellate court to render any judgment which is just, legal, and proper upon the record on appeal. We have concluded that the judgment should be reduced to $5,000 for the home movies and fifty percent of the balance.
Accordingly, the judgment is amended to reduce the amount to $20,941.00. In all other respects the judgment is affirmed. Accordingly there is judgment in favor of plaintiffs against the defendant for $20,941 with legal interest from date of judicial demand until paid and for all costs.
AMENDED AND AFFIRMED.